USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/25/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JONATHAN SCHWARTZ,

                                                        **Plaintiff,**                                              17-CV-04124 (SN)

                          -against-                                **OPINION & ORDER**

SENSEI, LLC, et al.,

                                                        **Defendants.**

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

      This case concerns a finder's fee agreement (the "Finder's Agreement") entered into between Plaintiff Jonathan Schwartz ("Schwartz") and Defendant Sensei, LLC ("Sensei"), by its CEO, Defendant Sean Daniel McDevitt ("McDevitt"). The Finder's Agreement provided, in relevant part, that if a third party identified by Schwartz invests in Sensei, or if that third party introduces other parties who invest in Sensei, then Schwartz is entitled to a fee equal to 7% of the amount of the investment. Schwartz introduced Sensei to Defendant Odeon Capital Group, LLC ("Odeon"), an investment banking entity. Sensei signed an agreement to retain Odeon as a financial advisor, and one of Odeon's clients made a $2 million investment in Sensei. Sensei then refused to pay Schwartz the commission set forth in the Finder's Agreement.

## BACKGROUND

      The facts of this case were set out in detail in the Court's September 30, 2020 order dismissing the claims against Defendants Odeon, McDevitt, and Alexander Eric Furer. See ECF No. 146. I provide a brief summary of facts and procedural background relevant to the inquest on damages.

Schwartz was introduced to McDevitt and Sensei in or about September 2015. At the time, McDevitt and Sensei were actively seeking investors, and Schwartz told McDevitt that he was willing to look within his network in the finance industry to identify an investor in exchange for a fee. McDevitt and Schwartz executed the Finder's Agreement with an effective date of November 6, 2015. See ECF No. 117-1. The Finder's Agreement provided, in relevant part, that if a third party identified by Schwartz invested in Sensei, or if that third party introduced other parties who invested in Sensei, then Schwartz was entitled to a fee equal to 7% of the amount of the investment. Id. at 1-2. There was also a non-circumvention clause that prohibited Sensei from entering into any business transaction or relationship with a named investor or investment banking entity with which Schwartz had a relationship unless that transaction or relationship was first disclosed to Schwartz and he was compensated as set forth in the Finding Agreement. Id. at 1. The Finding Agreement also provided that, if Sensei executed a transaction with an investor or investment banking entity in violation of the Finding Agreement, Schwartz was entitled to a fee from Sensei equal to 15% of the total value of the transaction. Id. at 2.

Approximately six months after entering the Finder's Agreement, Schwartz contacted Odeon, an investment banking entity. Odeon indicated interest in meeting with Sensei to discuss investing. After Schwartz and an Odeon employee emailed about Sensei, the Odeon employee met with McDevitt and thanked Schwartz for setting up the meeting. Shortly after the Odeon-McDevitt meeting, Sensei and Odeon signed an agreement dated May 10, 2016 (the "Odeon Agreement"), providing that Sensei was retaining Odeon as a financial advisor to provide services including identifying and contacting potential investors. See ECF No. 117-3. The Odeon Agreement stated that the Sensei "has been involved in discussions with financing groups and individuals prior to this agreement," and Odeon acknowledged "that no cash fee shall be due

Odeon if those groups or individuals provide capital to the company." Id. at 1. McDevitt did not inform Schwartz about the Odeon Agreement.

In August 2016, McDevitt told Schwartz that he was "fine with 7% on the first $2mm" but that "if an additional $4 or $5mm is raised through Odeon, a 7% cash fee on top of the fee [he] [is] paying Odeon is really rich." ECF No. 117-4.

On or about January 10, 2017, one of Odeon's clients made a $2 million investment in Sensei. Without Schwartz's knowledge, Sensei paid Odeon $140,000—an amount equal to 7% of the investment—in cash. About three days later, Schwartz emailed McDevitt and Furer, congratulating them and stating that, as the parties had agreed, Schwartz was due a 7% fee. McDevitt did not respond. On February 9, 2017, Schwartz's then-attorneys advised McDevitt that Sensei's refusal to compensate Schwartz the 7% commission on Odeon's $2 million investment had triggered a breach of the Finder's Agreement, and that Schwartz was therefore entitled to relief of 15% of the $2 million investment. See ECF No. 117-5. Sensei's attorneys responded that Sensei considered Schwartz to be an unregistered broker dealer and that, even if he had performed services entitling him to compensation under the Finder's Agreement, Sensei would not pay because doing so would violate Securities Exchange Commission rules. See ECF No. 117-6.

Plaintiff filed his complaint in June 2017, naming Sensei as the only Defendant. On September 27, 2017, the Honorable Robert W. Sweet entered a default judgment against Defendant Sensei, see ECF No. 21, but the default judgment was later vacated. The case was referred to me for settlement in April 2018, see ECF No. 42, and soon after, the parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c), see ECF No. 45. The parties agreed to a settlement, so in September 2018 the case was dismissed with prejudice. ECF No. 46. The

settlement broke down, however, and the case was restored to the Court's calendar in February 2019. ECF No. 55.

Plaintiff's Second Amended Complaint was filed on September 3, 2019. ECF No. 117 ("SAC"). All Defendants moved to dismiss. ECF Nos. 121, 123, 126. In February 2020, Sensei consented to entry of default, ECF No. 145, and the Court has since dismissed the other defendants, ECF No. 146. The only issue that remains before the Court is Schwartz's entitlement to damages and any other monetary relief from Sensei.

Schwartz seeks relief against Sensei for breach of the Finder's Agreement, breach of the non-circumvention agreement included in the Finder's Agreement, and fraudulent conveyances and constructive fraud.

## DISCUSSION

### I.  Legal Standard

The Court of Appeals set forth the procedural rules applicable to the entry of a default judgment in City of New York v. Mickalis Pawn Shop, LLC:

> "Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation." Vt. Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004). Rule 55 provides a "two-step process" for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment. New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005). The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff. . . . The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c).

645 F.3d 114, 128 (2d Cir. 2011).

Where default has been entered against a defendant, courts are to accept as true all of the well-pleaded facts alleged in the complaint, except those concerning the amount of damages. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)). "Even after the default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." In re Industrial Diamonds Antitrust Litig., 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000) (cleaned up). Where a plaintiff's well-pleaded facts are sufficient to state a claim on which relief can be granted, the only remaining issue in an inquest is if the plaintiff has provided adequate support for the requested relief. See Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (citing Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).

"[A] plaintiff seeking to recover damages against a defaulting defendant must prove its claim th[r]ough the submission of evidence . . . ." Malletier v. Carducci Leather Fashions, Inc., 648 F. Supp. 2d. 501, 503 (S.D.N.Y. 2009). A court may determine the amount a plaintiff is entitled to recover without holding a hearing so long as (1) the court determines the proper rule for calculating damages, and (2) the evidence submitted by the plaintiff establishes "with reasonable certainty" the basis for the damages. Id. (first citing Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155, then citing Transatlantic Marine Claims Agency Inc., 109 F.3d at 111).

## II.     Default Judgment

### A.     Liability for Breach of Contract

Schwartz alleges that Sensei breached the Finder's Agreement both generally and specifically as to its non-circumvention clause.

The elements of a breach of contract claim are: "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." Arakelian v. Omnicare, Inc., 735 F. Supp. 2d 22, 31 (S.D.N.Y. 2010) (quoting Terwilliger v. Terwilliger, 206 F.3d 240, 246 (2d Cir. 2000)). Formation of a valid contract requires "an offer, acceptance, consideration, mutual assent and intent to be bound." Id. (citing Leibowitz v. Cornell Univ., 584 F.3d 487, 507 (2d Cir. 2009)).

Schwartz has alleged that: (1) he and Sensei were bound by the Finder's Agreement, SAC ¶¶ 65, 72; (2) he performed by introducing Sensei to Odeon who in turn introduced Sensei to an investor, id. ¶¶ 78-84, 96; (3) Sensei breached by failing to pay him a finder's fee upon the investment, id. ¶¶ 101-02, 105; and (4) he is owed damages in the amount of the fee he was owed. Additionally, by signing the Odeon Agreement and paying Odeon $140,000, all without informing Schwartz, Sensei entered into a business transaction and relationship with an investment banking entity with which Schwartz had a relationship without first telling him. Sensei therefore breached the non-circumvention clause in the Finder's Agreement. I previously found that Schwartz states a plausible claim that Sensei breached the Finder's Agreement, ECF No. 146 at 17, and like before, I conclude that Schwartz has pleaded Sensei's liability for breach of the Finder's Agreement both generally and as to its non-circumvention clause.

### B.    Liability for Fraudulent Conveyance

Schwartz claims that the $140,000 payment that Sensei made to Odeon was a fraudulent conveyance. See SAC ¶¶ 295-97. He also claims that the $2 million investment, which he facilitated, was deposited in a manner intended to render Sensei insolvent and incapable of paying him, and was therefore also a fraudulent conveyance. Id. ¶¶ 298-301.

A conveyance is fraudulent where it is made "with actual intent to hinder, delay, or defraud any creditor of the debtor." N.Y. Debt. & Cred. Law § 273(a)(1) (2020) (formerly codified at N.Y. Debt. & Cred. Law § 276).

Schwartz has not established that Sensei made the Odeon payment or the $2 million deposit with the actual intent necessary to make either of the conveyances fraudulent. As the Court noted previously, Schwartz does not provide any detail about the alleged efforts to render Sensei judgment-proof. See ECF No. 146 at 21-22. Schwartz makes no showing that either the Odeon payment or $2 million deposit were intended to prevent him from recovering his finder's fee. See SAC ¶ 295. Schwartz states that the $2 million investment was, "upon information and belief," structured in a "creative way that would purposely frustrate the efforts of creditors including the Plaintiff and undercapitalize the Company rendering it incapable of paying its obligation under the Finder's Agreement." Id. ¶ 289. But, again, the fact that Odeon was apparently paid out of the $2 million investment renders this claim implausible. That the funds were placed into a blocked account, id. ¶ 99, does not evidence purposeful undercapitalization of Sensei or intent to prevent payment to Schwartz. Schwartz has not demonstrated the "actual intent" necessary for either the Odeon payment or the $2 million deposit to be considered fraudulent conveyances under New York law. He has not adequately pleaded Sensei's liability for fraudulent conveyance.

### C. Liability for Constructive Fraud

Finally, Schwartz argues that the Odeon payment and $2 million deposit constituted constructive fraud. Id. ¶¶ 287-93.

The elements of a claim for fraud are: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable

reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006); accord Albert Apartment Corp. v. Corbo Co., 182 A.D.2d 500, 500-01 (1st Dep't 1992). "The elements of constructive fraud are the same as those for actual fraud, except that the element of scienter is replaced by a fiduciary or confidential relationship between the parties." Wilson v. Dantas, 746 F.3d 530, 536 n.2 (2d Cir. 2014) (quoting Klembczyk v. Di Nardo, 265 A.D.2d 934, 936 (4th Dep't 1999)). "[T]he crux of a confidential relationship is justifiable trust," and a confidential relationship "typically" "involves a relationship of trust such as parent and child, husband and wife, guardian and ward, trustee and cestui que trust, principal and agent, or attorney and client." LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC, 10 F. Supp. 3d 504, 524 (S.D.N.Y. 2014) (cleaned up).

Schwartz has not demonstrated a confidential or fiduciary relationship between himself and Sensei that warranted him "to repose his confidence in the defendant and therefore to relax the care and vigilance he would ordinarily exercise in the circumstances." Brown v. Lockwood, 76 A.D.2d 721, 731 (2d Dep't 1980). He and Sensei were both "sophisticated entities engaging in an arms-length transaction," LBBW Luxemburg S.A., 10 F. Supp. 3d at 525, and there is no evidence of "a closer degree of trust between the parties than that of the ordinary buyer and seller," Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co., 478 F. App'x 679, 682 (2d Cir. 2012). Moreover, as discussed above, Schwartz has not shown that Sensei had the intent to defraud him. Schwartz has, therefore, not adequately pleaded Sensei's liability for constructive fraud.

**III. Damages**

Schwartz claims in his proposed findings of fact and conclusions of law that he is entitled to a judgment against Sensei of $440,000 (the 7% fee he was owed under the Finder's

Agreement and an additional 15% under the Agreement's remedies clause); but see ECF No. 29 at 4 (Plaintiff's letter to the Court stating that Sensei's breach of the Finder's Agreement "entitles Schwartz to 15%, not just 7%").

"Parties to a contract have the right, under New York law, to specify within a contract the damages to be paid in the event of a breach" as long as that clause "is neither unconscionable nor contrary to public policy." Rattigan v. Commodore Int'l Ltd., 739 F. Supp. 167, 169 (S.D.N.Y. 1990). If the clause "is intended by the parties to operate in lieu of performance, it will be deemed a liquidated damages clause and may be enforced by the courts." Id. (quoting Brecher v. Laikin, 430 F. Supp. 103, 106 (S.D.N.Y. 1977)); accord Trustees of Columbia Univ. in City of New York v. D'Agostino Supermarkets, Inc., 36 N.Y.3d 69, 75 (2020).

The Finder's Agreement's remedies clause specifically provides that Schwartz was entitled to injunctive relief to prevent breaches and to specifically enforce its terms, but that in the event of breach, he was entitled to a fee equal to 15% of the total value of the breaching transaction "in addition to any other remedies or compensation allowed by law or by separate agreement." ECF No. 117-1 at 2. There is no evidence to suggest that the 15% fee is "plainly disproportionate," Wilmington Trust Co. v. Aerovias de Mexico, S.A., 893 F. Supp. 215, 218 (S.D.N.Y. 1995), or otherwise unconscionable or against public policy.

Schwartz characterizes the 15% fee as an "additional" remedy he is owed on top of the 7% finder's fee. ECF No. 149 ¶ 62. The Finder's Agreement, however, provides that the only remedies for a breach are the 15% fee and anything else allowed "by law or by separate agreement." The parties are entitled to "determine in advance the amount of compensation due in case of a breach of contract." United Air Lines, Inc. v. Austin Travel Corp., 867 F.2d 737, 740 (2d Cir. 1989). Having established a breach of the Finder's Agreement, Schwartz is entitled to

9

the remedies available under the Agreement. He is therefore owed the 15% fee. He has not established that "law" or "a separate agreement" would entitle him to anything more. To award both the finder's fee he would have been paid had Sensei performed under the contract *and* the 15% fee he was contractually entitled to in the event of breach would "provide a windfall recovery." Topps Co. v. Cadbury Stani S.A.I.C., 380 F. Supp. 2d 250, 268 (S.D.N.Y. 2005). I find that Schwartz is entitled to 15% of the $2 million investment, or $300,000, from Sensei for its breach of contract.

Additionally, under New York law, Schwartz is entitled to prejudgment interest on any "sum awarded because of a breach of performance of a contract." N.Y. CPLR § 5001(a); see Days Inns Worldwide, Inc. v. Hosp. Corp. of the Carolinas, No. 13-cv-8941 (JPO), 2015 WL 5333847, at *5-6 (S.D.N.Y. Sept. 14, 2015) (awarding prejudgment interest on liquidated damages for breach of contract). The prejudgment interest rate is nine percent per year, N.Y. CPLR § 5004, and is computed "from the earliest ascertainable date the cause of action existed," id. § 5001(b). Prejudgment interest for breach of contract is measured from the date of breach. Van Nostrand v. Froehlich, 44 A.D.3d 54, 56 (2d Dep't 2007) (citing De Long Corp. v. Morrison-Knudsen Co., 14 N.Y.2d 346, 348 (1964)). Here, Sensei breached the Finder's Agreement's non-circumvention clause on the date it entered into the Odeon Agreement, which was May 10, 2016. Schwartz is granted prejudgment interest on his award of $300,000 from May 10, 2016, until the date of entry of judgment, at the rate of nine percent per year.

## IV. Attorney's Fees

Schwartz also argues that he is entitled to reasonable attorney's fees, no less than the $75,000 previously awarded by the Court in its first, now vacated default judgment against Sensei.[1] See ECF No. 21.

"Under New York law, 'generally, attorney's fees are not recoverable as damages in an action for breach of contract . . . , unless expressly agreed to by the parties.'" McGraw-Hill Companies, Inc. v. Vanguard Index Trust, 139 F. Supp. 2d 544, 556 n.6 (S.D.N.Y. 2001) (quoting Equitable Lumber Corp. v. IPA Land Development Corp., 38 N.Y.2d 516, 519 (1976)) (cleaned up). Accordingly, "there is no basis for awarding attorney's fees in this relatively straightforward breach of contract case." Gevorkyan v. Judelson, No. 13-cv-8383 (RMB), 2015 WL 6508324, at *1 (S.D.N.Y. Oct. 20, 2015).

## CONCLUSION

Sensei is liable for $300,000 in liquidated damages, plus 9% prejudgment simple interest, calculated from May 10, 2016, to the date of judgment. The Clerk of Court is respectfully directed to enter judgment for the Plaintiff and to close this case.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

Dated: February 25, 2022
       New York, New York

---

[1] Schwartz further claims that he is entitled to "sanctions" from McDevitt, including reasonable attorney's fees and other expenses incurred in the mediation and all post-mediation litigation in this case. Given that McDevitt has been dismissed as a defendant, I cannot impose sanctions against him.